LUCKETT-WAKE TOBACCO CO. v. GLOBE & RUTGERS FIRE INS. CO.

(Circuit Court, W. D. Kentucky. December 22, 1908.)

1. INSURANCE (§ 421*)—CONSTRUCTION OF POLICY—EXCEPTIONS.

In a policy insuring property against loss by fire except as otherwise provided, a clause excepting "loss caused directly or indirectly by invasion, insurrection, riot," etc., must be construed as an exemption of the insurer from liability for a loss from fire caused by a riot; a loss otherwise than by fire being entirely outside the terms of the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1133; Dec. Dig. § 421.*]

2. INSURANCE (§ 146*)—CONSTRUCTION OF CONTRACT.

Insurance policies are contracts by the terms of which both parties are bound, when clear and unambiguous.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 292; Dec. Dig. § 146.*]

3. INSURANCE (§ 141*)—EXCEPTIONS IN POLICY—WAIVER.

The fact that an insurance agent, who issued policies to plaintiff, urged as an inducement to procure such insurance the very danger which afterward caused a loss, but which was within the exception contained in the policies, does not constitute a waiver by the insurer of such exception, where there was no agreement to that effect, and the policies were delivered and accepted with such clause retained.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 255; Dec. Dig. § 141.*]

At Law. On demurrer to reply.

Wilbur F. Browder and J. C. Browder, for plaintiff.
Chas. H. Sheild and Flexner & Campbell, for defendant.

EVANS, District Judge. The plaintiff sued to recover upon two policies of insurance, one for $4,000 and the other for $1,000. Each policy was signed by the defendant, and the plaintiff, acceding to their terms, paid the premiums, and the policies were accepted by and delivered to it. When thus accepted and delivered, the written policies constituted the contracts deliberately entered into by the parties, and evidenced their agreements. Being contracts, we know of no reason why each party thereto is not entitled to the benefits and subject to the burdens thereby imposed. Each policy provides that the defendant company "does insure" the plaintiff in the amounts stipulated for the specified term "against all direct loss or damage by fire except as hereinafter provided," and each policy thereinafter contained a provision which, for brevity's sake, will be called the "excepting clause," and which is in this language:

"This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war, or commotion, or military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring premises, or (unless fire ensues, and in that event for the damage by fire only) by explosion of any kind, or lightning; but liability for direct damage by lightning may be assumed by specific agreement hereon."

A fire having occurred by which the insured property was destroyed, this action was brought upon the written contracts, and a recovery was claimed under their stipulations. The defendant answered, asserting that the insured property was consumed by a fire which was caused by acts which are specifically and in detail set forth, and which, in the judgment of the court, show that the fire and consequent loss was caused by a riot within the meaning of that word as used in the policy. In the judgment of the court the conduct, described in the answer, of persons commonly called "Night Riders," constituted a "riot," and those persons, when assembled and acting together, constituted a "mob," within the meaning of those almost synonymous words as given by Bouvier in his Law Dictionary. The court has no doubt that the facts stated in the answer bring the loss within the express stipulations of the parties as set out in their contracts.

When the demurrer was argued, it was urged on behalf of the plaintiff that inasmuch as the excepting clause stipulated that "the company shall not be liable for loss caused directly or indirectly by invasion, riot," etc., and did not provide that "the company shall not be liable for loss by fire caused directly or indirectly by invasion, riot," etc., the policy covered the loss independently of the excepting clause, and that the answer did not show a state of fact which brought the case within that clause, because the words "by fire" were not included therein. This view appears to be supported by the case of Commercial Insurance Co. v. Robinson, 64 Ill. 265, 16 Am. Rep. 557; but we cannot yield to the argument nor to that case. The view seems to be wholly unsound and unmaintainable. The only loss insured against or which is covered by the policies is "loss by fire," and we

do not doubt that the exception in the policies of loss caused directly or indirectly by "riot" must include those from fires which are the work of rioters. The excepting clause necessarily relates back to a "loss by fire," as that phrase is previously used in the policy; otherwise, the excepting clause is meaningless as referring to a loss not covered by the insurance. When we lay out of view all the intervening and inapplicable clauses in the policy, and endeavor to bring into juxtaposition those clauses which bear upon the question now involved, we think the only fair and sensible construction of the contracts is that the policies insured the plaintiff against direct loss by fire except as further therein provided, to the effect that the defendant shall not be liable for any loss caused directly or indirectly by riot. If the loss was not by fire, it was not insured against at all, and the excepting clause was useless. If the loss was by fire, it was insured against, unless the fire bringing about the loss was caused directly or indirectly by riot. If the latter, the loss comes within the excepting clause; but in the former the loss was not insured against at all, so that in either event the defense is good. That this is the fair and natural interpretation of the language of the parties in the contract sued on we do not doubt, and we think these conclusions are supported by the decisions in Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, Insurance Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65, and Montgomery v. Firemen's Insurance Co., 16 B. Mon. (Ky.) 442.

We state now and in this way the grounds upon which the demurrer to the answer was heretofore overruled, and, as the tobacco was consumed by a fire which the rioters kindled, we cannot doubt that its loss was directly or indirectly caused by riot, within the meaning of the policies. If this be so, the answer states facts which constitute a defense to the action, and for that reason the court overruled the demurrer thereto.

When the demurrer to the answer was overruled, the plaintiff filed a reply in four separate paragraphs, seeking to break or avoid the force of the answer, and to each of those paragraphs the defendant has demurred. In determining the questions thus raised, it is important to bear in mind that the plaintiff had in its petition sued upon, and had thus avowed the integrity of, the contracts evidenced by the policies. Now it seeks to disavow certain elements of those contracts; but we think there is nothing in the reply which appears to entitle the plaintiff either to get away from the contracts or to alter or to amend their provisions. The contracts sued upon by the plaintiff in their stipulations must be treated in this common-law action as binding upon both parties; the only questions being as to the proper construction of their stipulations. We know of no reason, or principle of justice, or rule of law which puts insurance contracts, plainly and unambiguously expressed, outside of the rules of proper construction, or exempts either party to them from the obligatory force of their stipulations. Northern Assurance Co. v. Grandview Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213. True, insurance companies prepare the contracts, and where their terms are ambiguously expressed, and in certain other well-established instances, the courts lean against them in efforts to ascertain their meaning;

but such rules have no application here, where there does not appear to be the slightest trouble in ascertaining the meaning of the terms and stipulations of the policies.

Bearing in mind these general propositions, we come to the consideration of the separate paragraphs of the reply. The first of them does not, as we view it, undertake to deny any statement of fact made in the answer, but confines itself to controverting conclusions of law. Legal questions being determinable by the court, it is unnecessary to raise any issue in the pleadings upon them, and a pleading which does nothing else is for that reason insufficient.

The second paragraph undertakes to state certain inducements offered for taking out the insurance, such as representations of the existence of a dangerous and unusual situation in plaintiff's locality and the surrounding parts of the state, and insists that the excepting clause in the policies was waived before the policies were accepted or delivered. Assuming that in soliciting business defendant's agent urged upon plaintiff the facts stated in reply as a reason for insuring its property, there is no averment nor pretense that there was any agreement in advance of issuing the policies that the excepting clause should be omitted therefrom. On the contrary, after the inducements, if such they can be considered, were offered, or after the arguments, as we might more properly call them, were urged—in short, after the preliminary talks and treaty between the parties—the policies were executed, paid for, delivered, and accepted with the excepting clause plainly printed in each and expressly included in the stipulations of each of the contracts which the plaintiff has sued upon. If the exclusion of the excepting clause had been agreed upon in advance, but had nevertheless been included by mistake or fraud, there might have been a basis for equitable relief in a suit for a reformation of the contracts so as to make the policies read as had been agreed upon. In the absence of such previous agreement for the exclusion or noninsertion of the excepting clause, if there had been any misrepresentations as to the state of affairs in the locality mentioned in the reply, and if thereby, or if by any fraudulent means, the plaintiff had been induced by its agent to enter into the contracts, there might be a basis for a suit in equity for the rescission of the contracts and the return of the premiums paid; that being the exact measure of the damages which the plaintiff in that event would have sustained by entering into the contracts, as distinguished from rights arising under them. Neither of those things, however, appears to have been attempted by the plaintiff; and its counsel, in insisting upon the proposition that there was a waiver in advance of the making of the contracts, seem to confound or confuse a possible mistake in omitting agreed clauses or a misrepresentation in the preliminary treaty, with a waiver of some stipulation of a contract by a course of conduct after the contract had been entered into. A waiver in the accurate sense in cases like this must be by conduct subsequent, and not prior, to the completion of the agreement. Things occurring before the contract is made are merged into it, and become immaterial afterwards, while subsequent conduct, which it is claimed amounts to a waiver of some stipulation therein, is important, though we think all such latter considerations are inapplicable to this

case; the alleged waiver having occurred, if at all, before the contracts were made. We conclude that nothing in paragraph 2 of the reply, which refers to matters occurring before the completion of the contracts sued on, in any way shows a waiver by the defendant of any one of their stipulations.

This conclusion, we think, is sustained by the opinion of the Circuit Court of Appeals in United Firemen's Ins. Co. v. Thomas, 82 Fed. 106, 27 C. C. A. 42, 47 L. R. A. 450. Nor is this conclusion affected by an attempt in the second paragraph to show that on the morning after the fire, and while it was yet smoldering, the defendant's local agent desired or attempted to do all he could to save as much of the insured property as possible. This was in the interest of all parties. He did not undertake to do more, and this was not intended; nor was anything that he said at the time intended as a settlement of anybody's rights in the premises. It is not alleged that the agent then had any authority to make a new contract whereby his principal might become bound, if not already liable, and it could scarcely be supposed that the agent had authority to make a contract so obviously out of the usual line and course of business. It is not alleged that he then had knowledge of the legal bearing of the altered situation, or that with such knowledge he ratified any claim of the plaintiff, or that he had any authority so to ratify or agree to it. Ratification must always be based upon full and adequate knowledge of the situation, as well as upon authority to make it. In short, it is not alleged that the agent intended to make anything binding upon anybody by what he did or said at the time, nor that he had any authority to do so. Indeed, it is hardly more than the imagination of some important effect resulting from a casual and possibly kindly act. Upon this phase of the question we think light is thrown by the opinion of the Circuit Court of Appeals in Washburn & Moen Manufacturing Co. v. Reliance Marine Ins. Co., 82 Fed. 296, 27 C. C. A. 134.

The third paragraph of the reply, like the first, appears to deny legal conclusions only, and not the allegations of fact set out in the answer. This paragraph, therefore, is insufficient in law.

The fourth paragraph practically states the facts as to the mob and the destruction of the insured property precisely as defendant had stated them in its answer, except that plaintiff calls the assemblage which committed the outrage organized "incendiaries," and seems to think that the acts of incendiaries cannot be properly characterized as a riot. Ordinarily we connect incendiarism with secrecy of action. Here the acts of the rioters or mob were open and audacious, even if, with due regard to their own personal safety, they chose the hour of midnight. This circumstance, however, cannot make the conduct of the assemblage any less a riot. Many of the most famous riots have occurred at midnight, and, if there was not a riot in this instance, new definitions of old words must be found.

We think the parties here made plain contracts, that they are alike bound by the terms and stipulations thereof, that the plaintiff agreed that the defendant should not be liable under such circumstances as here existed, and that plaintiff is therefore prevented by his own express contract from recovering against the defendant.

The demurrer to each paragraph of the reply will be sustained, and the plaintiff will be given leave to amend. The plaintiff, however, declines to amend its reply, and it and the defendant join in requesting the court now to decide the case on the pleadings as left after the determination of the various demurrers. By a failure to controvert them, the allegations of the answer stand admitted by the plaintiff to be true, and, those allegations being true, the court is of opinion that the answer presents a good and sufficient defense to the action; and it follows that the plaintiff's petition must be dismissed, with costs.

A judgment accordingly may be entered.