The Hardin Bag Burlap Company, Inc., alleging that it was the holder of several policies of insurance with the defendant, Fidelity Guaranty Fire Corporation of Baltimore, covering it "against all direct loss and damage by sprinkler leakage", and that it suffered a loss directly caused by sprinkler leakage on February 26, 1939, of which $665.85 was covered by the defendant insurance company and which, upon demand, it refused to pay, brought this suit seeking to recover the amount. The defendant answered denying its liability upon the ground that the loss was not within the coverage of the policies as affected by a "Hazards not Covered" provision in the policies.
There was judgment below in plaintiff's favor as prayed for and defendant has appealed.
There is no contention concerning the facts. The plaintiff's merchandise was on the ground floor of a four-story building which was unroofed by a windstorm on the 26th day of February, 1939. The sprinkler pipe, which was on the top floor, *Page 831 
was broken as a result of the destruction of the roof, causing water to flow from the pipe at the rate of about 250 gallons per minute. The water seeped through or, in some manner, reached the bottom floor and damaged plaintiff's stock to the extent claimed.
The only question, one of law, which we are called upon to decide is whether the loss is within the coverage of the policy. The case has been very ably argued at the bar and in brief and we have had the benefit of a well-prepared brief by amici curiæ. It is not too much to say that every crack and cranny of the case has been illumined by the professional skill and learning of counsel and that if we err in our conclusion, the fault must rest with us.
The policies issued had insured the plaintiff against "all direct loss and damage by sprinkler leakage, except as herein provided". Pretermitting for the moment any discussion of the question of proximate cause or of the exceptions "herein provided" we observe that under the conceded facts in the case, plaintiff's loss was directly caused by sprinkler leakage and since that is the peril insured against, under this view of the situation, there should be recovery, as we believe will be freely conceded by all concerned.
We turn now to the exceptions mentioned in the policies and we find under the title "Hazards not Covered", the following: "This Company shall not be liable for loss or damage caused directly or indirectly by seepage or leakage of water through building walls, foundations, sidewalks, or sidewalk lights (unless caused by `Sprinkler Leakage'), or by condensation or deposits on the `Automatic Sprinkler System', or by floods, inundations, or backing up of sewers or drains or by the influx of tide water or water from any source other than the `Automatic Sprinkler System', or by fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, including explosion and/or ruptures of steam boilers and fly-wheels, blasting, invasion, insurrection, riot, civil war or commotion, or by military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after a `Sprinkler Leakage'; nor, unless otherwise provided by agreement in writing added thereto, for loss or damage caused directly or indirectly by aircraft and/or aircraft equipment (whether on or off the ground — and not contained in the building(s) described herein) and/or objects falling or descending therefrom."
It is said that the "Hazards not Covered" section of the policy must be read in connection with the coverage and that, consequently, the fair meaning to be derived from this consideration would be that the company is not liable for loss caused by sprinkler leakage if the leakage was caused by any of the disturbances of nature or hazards mentioned in the excepting clause. On the other hand, it is argued that if such had been the intention of the insurance company which wrote the policy, it would have been easy for it to have said so, and that the fact that it did not do so is suggestive of an intention to the contrary and that the best that can be said of the excepting clause is that it is ambiguous and that, therefore, under familiar rules of construction, must be interpreted against the insurance company, the author of the policy.
We agree with the first proposition and see no necessity to repeat in the exception the fact that the rule is modified by it. The rule here is that the insurer is liable for damage caused by sprinkler leakage and we look to the exceptions for its qualification. There is no point in having any exceptions in the policy unless they can be said to qualify the rule.
"Hazards not Covered".
The use of the plural is confusing since there is only one hazard covered by the policy, but we pass on.
"This company shall not be liable for loss or damage caused directly or indirectly by seepage or leakage of water thru building walls, foundations, sidewalks, or sidewalk lights (unless caused by `sprinkler leakage')".
As an exception to the coverage, this statement is remarkable, because it is equivalent to saying that the company is not liable for seepage or leakage of water through building walls caused by sprinkler leakage unless caused by sprinkler leakage. "* * * or by condensation or deposits on the `automatic sprinkler system', or by floods, inundations, or backing up of sewers or drains, or by the influx of tide water or water from any source other than the `automatic sprinkler system.'" *Page 832 
Here again, with the exception of the condensation or deposits on the Automatic Sprinkler System, we find an affirmation of the original coverage as an exception to the exception. The other forms of water damage unrelated to sprinkler leakage are not covered. Why they are mentioned here is not easily understood.
"* * * or by fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, including explosion and/or ruptures of steam boilers and fly-wheels, blasting, invasion, insurrection, riot, civil war or commotion, or by military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after a `sprinkler leakage'".
With some stretch of the imagination, most of these hazards may be said to qualify sprinkler leakage; that is to say, they might cause sprinkler leakage and might, if the implications were possible, be considered as having been intended to qualify the original coverage of the policy, but we notice the word "fire" and the words "military or usurped power, or by order of any civil authority" and we cannot understand how the latter words could have any reference to sprinkler leakage or water damage of any kind. As to the word "fire" it is our understanding that the operation of the sprinkler system is normally caused by fire.
In Hawthorne v. Canadian Casualty Boiler Insurance Company, 1907, 14 Ont. L.Rep. 166 (affirmed in 1907, 39 Can SC 563, 2 BRC 626) we read: "Fire as a result of an accidental escape of water is inconceivable. If the exception means anything it must therefore mean fire which causes an accidental escape of water. The whole object of the sprinkler system is to quench fire. And it is at once put in automatic operation by the presence of fire on the premises, so that an escape of water so caused would certainly not be accidental or intentional. The only possible operation of this exception would therefore be in the unlikely case of an external fire so fierce as to set the automatic sprinkler system in motion but not fierce enough to set the building on fire."
In Maxwell v. Springfield Fire Marine Insurance Co., 1920,73 Ind. App. 251, 125 N.E. 645, 647, concerning which we shall have more to say later, where the policy contained a provision to the effect that "This company shall not be liable * * * for loss by fire, however caused", the Court of Appeal of Indiana, said: "On first view, this clause seems to be utterly useless. But the presumption is that every statement in a contract was inserted for a purpose, and that presumption will prevail if any rational purpose can be discovered. The contract is not a policy of fire insurance; but the insurer is a fire insurance company [the defendant in this case, according to its title, is also a fire insurance company], as the policy itself denotes, and presumably it is engaged in the business of fire insurance. For this reason the company may have deemed it prudent to state clearly that by this policy it assumes no liability for loss by fire, no matter how the fire may have been caused. Thereby it avoids any misunderstanding or controversy concerning liability for loss by fire. This clause does not constitute an exception. It takes nothing out of the obligation to pay indemnity for loss by sprinkler leakage. It does not hold back or exclude from that obligation something which otherwise would be included therein. Clearly it is an independent statement of a collateral matter."
"* * * nor * * * for loss or damage caused directly or indirectly by aircraft and/or aircraft equipment (whether on or off the ground — and not contained in the building(s) described herein) and/or objects falling or descending therefrom."
Here our confusion becomes confounded. When an aircraft is on the ground and not in the building the possibility of its damaging the sprinkler system is inconceivable. When it is in flight it is possible that by dropping a monkey wrench or some heavier object, it might, by the force of gravity, penetrate the roof of a building and destroy a pipe connected with the sprinkler system, which might cause some damage. We have said that this could happen, but it is our belief that it is about as likely to occur as the Noahian deluge is to reoccur. Of course, it is possible that the aircraft itself could fall and damage the sprinkler system.
The long and short of it is that the so-called "Hazards not Covered" provision is inappropriate to a sprinkler leakage policy. Why this provision is in the policy we are unable to say, but it is as clear to us as anything can be that it does not and was not intended to qualify the original coverage of the policy. The best that can be said for it is that in a policy *Page 833 
which insured against the results of sprinkler leakage, a number of other hazards unrelated to the hazard insured against are expressly declared to be not within the coverage of the policy. In our opinion, the provision referred to, as an exception to the coverage of the policy, is to say the least, ambiguous. It must be ignored.
We are aware, however, that there are very respectable authorities to the contrary.
Industrial Paper Cordage Company v. Aetna Insurance Company, R.I., 14 A.2d 657, 660, 130 A.L.R. 703, is a case in point. There the Supreme Court of Rhode Island found a similar clause to be free from ambiguity, though recognizing that other courts had held otherwise. In fact, that Court found no difficulty whatever with the construction of a similar clause and quoted from Luckett-Wake Tobacco Company v. Globe Rutgers Fire Insurance Company, C.C., 171 F. 147, to the following effect: "In reference to the matter of ambiguity the court stated, 171 F. at page 149: `We know of no reason, or principle of justice, or rule of law which puts insurance contracts, plainly and unambiguously expressed, outside of the rules of proper construction, or exempts either party to them from the obligatory force of their stipulations. * * * True, insurance companies prepare the contracts, and where their terms are ambiguously expressed, and in certain other well-established instances, the courts lean against them in efforts to ascertain their meaning; but such rules have no application here, where there does not appear to be the slightest trouble in ascertaining the meaning of the terms and stipulations of the policies."
In Maxwell v. Springfield Fire Marine Insurance Co., supra, a case involving remarkably similar facts, where the claim was for sprinkler leakage caused by a storm which destroyed a portion of the roof of a building and "broke the pipes and attachments of a sprinkler system", the Court in considering a similar "Excepted Hazards" clause, which, however, did not have any reference to airplanes, found it to be equivocal and referring to the contention that the windstorm and not the sprinkler leakage was the direct cause of the loss, said: "The windstorm tore away a part of the roof of the factory, and broke the pipes and connections of the sprinkler system, and that constitutes a loss by windstorm. The extent of that loss could be ascertained by estimating the cost of restoring the roof, the pipes and connections. But the damage to the merchandise caused directly by the water from the sprinkler system is an entirely different loss. For the purposes of this policy, the wind cannot be regarded as the direct and immediate cause of that loss, but must be regarded as the indirect and remote cause thereof, for the reason that the very hazard which makes this species of insurance possible intervened".
This case apparently has the approval of the Supreme Court of Indiana since it refused to review the decision.
We come now to consider the question of proximate cause, that is to say, construing the policy simply from the standpoint of its original coverage, can it be said that the damage to plaintiff's goods was not caused by sprinkler leakage, but by the windstorm and, therefore, there should be no recovery. In the first place, the direct cause of the loss was the sprinkler leakage. The cause of that cause was the storm, but the intervening cause was the subject of insurance and however it may have been brought about, by whatever extraneous circumstance, by a storm or any other agency, the hazard insured against, the leakage from the sprinkler system, caused plaintiff's loss.
"* * * the wind cannot be regarded as the direct and immediate cause of that loss, but must be regarded as the indirect and remote cause thereof, for the reason that the very hazard which makes this species of insurance possible intervened." Maxwell v. Springfield Fire Marine Insurance Co., supra.
To the same effect is Hanover Fire Insurance Company v. Newman's, Inc., 5 Cir., 108 F.2d 561, 563. There the Court said: "If the policy had excepted damage by sprinkler leakage caused by cyclone, a different question would be presented. Under the plain provisions of the contract damage caused by cyclone and damage caused by sprinkler leakage are separate and distinct risks. The policy does not exclude damage from sprinkler leakage caused by extraneous force. Assuming the sprinkler leakage was caused by the cyclone, that would not prevent recovery. Maryland Casualty Co. v. Razook, 5 Cir., 24 F.2d 160".
In Ruling Case Law, Volume 22 on page 213, under the title "Proximate Cause in Insurance Cases", we read: "The rule is *Page 834 
well established, not only in the English but in the general American insurance law, that in the absence of all fraud, the proximate cause of loss only is to be regarded. The maxim in jure non remota causa sed proxima spectatur, however, is applied in a much more literal sense to cases in which the liability of an insurer is to be ascertained than to those involving a breach of contract or a tort. If the nearest efficient cause of the loss is one of the perils insured against, the courts look no further. In such cases, the insurer is not to be relieved from responsibility by showing that the property was brought within the peril insured against by a cause not mentioned in the contract."
In Howard Fire Insurance Company v. Norwich New York Transportation Company, 12 Wall. 194, 199, 20 L.Ed. 378, a case cited under the foregoing text, the Supreme Court of the United States held that an insurer was liable under a fire policy for loss occasioned by fire which was caused by a collision between two vessels. The court in its opinion said:
"There is, undoubtedly, difficulty, in many cases, attending the application of the maxim, `proxima causa, non remota spectatur,' but none when the causes succeed each other in order of time. In such cases the rule is plain. When one of several successive causes is sufficient to produce the effect (for example, to cause a loss), the law will never regard an antecedent cause of that cause, or the `causa causans.' In such a case there is no doubt which cause is the proximate one within the meaning of the maxim. But, when there is no order of succession in time, when there are two concurrent causes of a loss, the predominating efficient one must be regarded as the proximate one, when the damage done by each cannot be distinguished. * * *
"It is true, as argued, that as the insurance in this case was only against fire, the assured must be regarded as having taken the risk of collision, and it is also true that the collision caused the fire, but it is well settled that when an efficient cause nearest the loss is a peril expressly insured against, the insurer is not to be relieved from responsibility by his showing that the property was brought within that peril by a cause not mentioned in the contract."
Counsel argues that since the damaged property of plaintiff was on the ground floor of a four-story building and the water which damaged it came from the fourth story, the policy which insured plaintiff against direct loss due to sprinkler leakage did not cover this loss because the water did not come from the sprinkler system on the first floor, citing Couch on Insurance, Volume, 5, Section 1223, page 4476, and Bottomley v. Royal Insurance Company, 190 Mass. 73, 76 N.E. 463. These authorities do not sustain the proposition advanced by counsel. The insurance policy considered in the Bottomley case restricted the loss "from the sprinkler erected in or on that portion of the building occupied by the plaintiff". Couch also was discussing a similar restriction in a policy. Here there is no limitation in the policy concerning the origin of the water save only that it comes from the sprinkler system. It covered plaintiff's merchandise while located in the building numbered 1054 Constance Street.
Our conclusion is that the judgment appealed from is correct, consequently, and for the reasons assigned, it is affirmed.
Affirmed.