## BONDS-SANDERS PAPER COMPANY v. TRAVELERS FIRE INSURANCE CO.

Middle Section. January 17, 1931.

480

Manier & Crouch, of Nashville, for appellant, Paper Co.

Walter Stokes, George J. Gale and Hume & Armistead, of Nashville, for appellee, Insurance Co.

CROWNOVER, J. This is a suit to recover $1404.64 on an insurance policy known as "Sprinkler Leakage Policy" for damage caused to complainant's stock of paper by the sprinkler system.

The top of the chimney of complainant's building fell during a windstorm upon the roof, breaking through the roof and breaking the water pipes of the sprinkler system, which caused damage to the complainant's stock of paper.

The defendant Insurance Company filed an answer, setting up two defenses: first, that the proof of loss had not been properly made out and filed showing cause of the damage; second, that the sprinkler system had been broken by the fall of the chimney which had been blown over by a windstorm, which was not covered by the policy.

The Chancellor found that the chimney was blown down by a windstorm; that the damage was the result of the windstorm, which hazard is not covered by the policy; and he dismissed the bill at complainant's cost. From which decree complainant appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in holding that there was a windstorm in Nashville on January 24, 1928, at the time the chimney fell.

(2) The Chancellor erred in failing to hold that the fall of the chimney was due to its faulty construction and inherent weakness.

(3)   The Chancellor erred in failing to hold that the fall of the chimney was the proximate cause of the damage, and not the windstorm.

(4)   The Chancellor erred in failing to construe the specific "fall of the building" clause and the general "windstorm" clause together, and favorable to the assured.

Complainant obtained a policy of insurance known as a "Sprinkler Leakage Policy," insuring its stock of paper against all direct loss and damage by sprinkler leakage.

One section of the policy, under the heading "Hazards not Covered," is as follows:

"This Company shall not be liable for loss or damage caused directly or indirectly by fire, lightning, cyclone, tornado, windstorm, earthquake, explosion including explosion and/or ruptures of steam boilers and fly-wheels, blasting, invasion, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority; or by theft; or by neglect of the insured to use all reasonable means to save and preserve the property at and after a "Sprinkler Leakage.""

Another section of said policy, under the heading "Fall of Building," is as follows:

"If a building, or any material part thereof fall except as the result of "Sprinkler Leakage,"· all insurance by this policy on such building or its contents shall immediately cease."

On January 24, 1928, while this policy was in force, there was a windstorm in the City of Nashville and the vicinity, beginning at about 1:23 in the afternoon.  The wind was of sufficient intensity to injure roofs, blow down chimneys, trees, telephone poles, billboards, and do damage to other property in the City of Nashville. The proof showed that insurance companies paid over one hundred losses in Nashville and vicinity under windstorm policies as the result of this storm.   The defendant introduced a number of witnesses, including roofing contractors, owners of sign boards, owners of property, power company employees and insurance adjusters, all of whom testified that there was a windstorm on that day and that a great deal of damage was done to property.

On January 24, 1928, between 1 and 1:30 in the afternoon, the chimney which extended about fifteen feet above the building occupied by complainant, fell on to the roof of said building, breaking through the roof and rafters and breaking two of the water pipes of the complainant's sprinkler system, which precipitated water into the building, injuring the stock of paper on hand to the extent of $1404.64 after taking into account the salvage.   The chimney broke off at the edge of the roof.

1.   It is established by the proof that there was a storm of some magnitude on the afternoon of January 24, 1928.   But the

complainant contends that the chimney fell before the wind reached such velocity as to be called a windstorm.

Only one witness testified as to the velocity of the wind at the time the chimney fell, and he says that the wind was blowing hard when the chimney fell.

Witnesses for the complainant fixed the time of the fall of the chimney between 1 and 1:30 P. M., but this is an estimate, and they are not able to give the exact time. D. P. Sanders, who was vice-president and treasurer of the Paper Company, says that it must have been between 1 and 1:30 P. M., because he was always in the office between 12, noon, and 2 P. M., and estimates that it was at about 1:30 P. M. Miss Emma C. Dalton, an employee of the Paper Company, estimated that it was about this time, because she went to lunch at 1 P. M. and usually came back at 2 P. M. When she came back at 2 P. M. or a few minutes thereafter, the chimney had already fallen and water was pouring through the building. Her statement that this water had been running twenty minutes, is, of course, merely a guess.

The records of Edward B. Jones, a meteorologist with the United States Weather Bureau, at Nashville, show that at 1:23 P. M. wind was blowing at a rate of forty miles an hour according to the new scale anemometer, which would have been forty-eight on the old scale, and continued at greater velocity between 2 and 4 P. M. The extreme velocity was at 2:02 P. M. when it reached sixty miles per hour.

E. W. Morrison, Superintendent of Overhead Construction and Maintenance of Service for the Nashville Railway & Light Company, testified that the first report of damage from the storm was received at the office at 1:18 P. M., the next at 1:20, 1:24, 1:26, 1:30, 1:36, 1:37, 1:41, 2:02 P. M. and at short intervals until after 4 P. M. This was damage done to the poles, wires and other property of the Nashville Railway & Light Company in and about the City of Nashville.

The defendant Paper Company insists that under the old scale the wind must reach a velocity of from sixty-five to seventy-five miles an hour for it to be termed a windstorm, and under the new scale the wind must be blowing at the rate of fifty-two miles per hour to be designated as a windstorm; that the wind on January 24, 1928, did not exceed a velocity of forty miles per hour until after the chimney fell; therefore the chimney was not blown down by a windstorm, and the insurance company is liable for the damage.

But after an inspection of the evidence we are of the opinion that the ''windstorm'' as used in the policy, should be given its plain, ordinary and popular meaning, and accordingly, when wind blowing forty miles an hour as reckoned by the new scale blows off chimneys and does damage to other property it is ordinarily termed a wind-

storm, and damage done by it comes within the "hazards not covered" by the policy.

"The language of the policy must be construed according to its plain, ordinary, and popular sense, unless by some known usuage it has acquired a different and technical meaning. Seay v. Georgia Life Insurance Co., 132 Tenn., 673, 179 S. W., 312; 2 Cooley's Briefs on Insurance (2 Ed.), 1004.

We think that if the owner had carried tornado and storm insurance on the building that there could be no question about the liability of the insurance company for the loss caused by the fall of the chimney. This assignment must be overruled.

2. The assignment of error that the Chancellor erred in failing to hold that the fall of the chimney was due to its faulty construction and inherent weakness, is not well made.

Two witnesses testified as to the condition of the chimney. S. M. McMurrey, a civil engineer, who saw the chimney after its fall, testified that it was of defective construction; that at the edge of the roof, where the chimney broke off, six and one-half inches had been cut out of the chimney on the side toward the building where the edge of the roof projected; that this weakened the chimney and caused it to break off at that point.

J. N. Wilson, a builder of forty-one years' experience, testified that he had inspected the chimney before it fell; that it was well constructed of bricks and cement mortar, and that the bricks were entirely covered with the cement both on the inside and outside of the chimney; and that it was so well constructed that the fall did not break it all apart.

The chimney was constructed several years ago and had stood the weather and wind for these years. The property was insured as it stood. Complainant should have known as much as or more about the property than the insurance company, and accepted the risk incident to windstorms. The chimney no matter how strong or how weak was blown down by a windstorm, which was the proximate cause of the damage; hence the assignment must be overruled.

3. The contention that the Chancellor erred in failing to hold that the fall of the chimney was the proximate cause of the damage, and not the windstorm, is not well made and must be overruled.

"To justify recovery on a policy of insurance, it is not necessary that the peril insured against be the cause of the loss in the sense that it is the nearest cause in point of time or place. If the peril insured against be the efficient, predominating cause of the loss, it is regarded as the proximate cause thereof, although the result was brought about by train of events set in motion by the particular peril and operating

with reasonable certainty to occasion the loss." Maness v. Life & Casualty Ins. Co., 28 S. W. (2d), 339.

4. The assignment that the Chancellor erred in failing to construe the specific "Fall of the Building" clause and the general "Windstorm" clause together, and favorable to the assured, is not well made and must be overruled.

There is nothing in the contention that the two clauses should be construed together and that the insurance company was liable even though the windstorm blew the chimney down, that broke the sprinkler system that caused the water to wet the paper, because the falling of the chimney was not a material part of the building. The two clauses are not connected, not inconsistent, and it is neither necessary nor proper to refer to one in the construction of the other. They are two separate exceptions, and one is in no way dependent upon the other. If the building or a material part of it should fall, except as the result of sprinkler leakage the insurance shall immediately cease, but this clause is entirely separate from the other clause setting out the hazard not covered.

All the assignments of errors having been overruled, the decree of the Chancellor dismissing the bill is affirmed. The cost of the cause including the cost of the appeal is adjudged against appellant and the surety on its appeal bond.

DeWitt, J., and Higgins, S. J., concur.