INDUSTRIAL PAPER & CORDAGE CO. *vs.* AETNA INSURANCE COMPANY.

SAME *vs.* THE WORLD FIRE AND MARINE INSURANCE COMPANY.

SAME *vs.* PHOENIX ASSURANCE CO., LTD.

SHAW PAPER BOX COMPANY *vs.* INSURANCE CO. OF NORTH AMERICA.

SAME *vs.* PROVIDENCE WASHINGTON INSURANCE COMPANY.

JULY 25, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. These actions of the case in assumpsit were tried together by a justice of the superior court sitting without a jury. He rendered a decision for all the defendants. Thereupon a bill of exceptions was duly prosecuted in each case by the plaintiff therein, the sole exception pressed being to the said decision.

The same question of law is raised in all the cases. The facts are not in dispute. On September 21, 1938, the plaintiffs were carrying on business and owned certain goods in a building in the city of Pawtucket. This building had a basement, was five stories in height and was equipped with an automatic sprinkler system. On the above date a very severe windstorm blew down a brick chimney serving and standing near such building and extending some seventy feet above its roof level. Part of this chimney fell through the roof and the two upper floors of the building breaking the main feeder pipe of the sprinkler system and otherwise damaging that system. As a result of such break and damage large quantities of water were discharged from the automatic sprinkler system onto certain personal property of the plaintiffs then in the building. The amount of the damage so caused is not in question. The plaintiff Industrial Paper & Cordage Co. was injured to the extent of $17,827.73, distributed in agreed amounts among three defendant insurance companies. The plaintiff Shaw Paper Box Company was injured to the extent of $4,214.77, divided in agreed amounts between two defendant insurance companies.

Prior to September 21, 1938, each defendant insurance company had issued to the respective plaintiff now suing it a sprinkler leakage policy on a standard form, such policies being substantially identical in each instance. These policies were in full force and effect on September 21, 1938, and the

plaintiffs have complied fully with all conditions precedent contained in the policies before bringing the present actions.

The policies in question contained the following provisions which are applicable to the issue raised in the instant cases. They insure "against all Direct Loss and Damage by 'Sprinkler Leakage,' except as herein provided". Sprinkler leakage is defined in the policies as follows: "Wherever in this policy the term 'Sprinkler Leakage' occurs, it shall be held to mean leakage or discharge of water or other substance from within the 'Automatic Sprinkler System' resulting in loss or damage to property described herein."

Under the clause termed "Hazards not covered", the following appears:

"This Company shall not be liable for loss or damage caused directly or indirectly by seepage or leakage of water through building walls, foundations, sidewalks, or sidewalk lights (unless caused by 'Sprinkler Leakage'), or by condensation or deposits on the 'Automatic Sprinkler System,' or by floods, inundation, or backing up of sewers or drains, or by the influx of tide water or water from any source other than the 'Automatic Sprinkler System,' or by fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, including explosion and/or ruptures of steam boilers and fly-wheels; blasting, invasion, insurrection, riot, civil war or commotion, or by military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after a 'Sprinkler Leakage'; nor, unless otherwise provided by agreement in writing added hereto, for loss or damage caused directly or indirectly by aircraft and/or aircraft equipment (whether on or off the ground—and not contained in the building(s) described herein) and/or objects falling or descending therefrom."

We do not have before us in this case the interpretation of all the provisions in the above-quoted comprehensive

clause. It obviously contains elements which are not involved herein. The only portion of the clause which is material for the determination of the instant case is as follows: "This Company shall not be liable for loss or damage caused directly or indirectly by . . . cyclone, tornado, windstorm, . . . ." The plaintiffs contend that, under the agreed facts, the policies issued to them cover the loss they incurred. The defendants take the position that, because of the above-mentioned provisions of the "hazards not covered" clause, they are not liable to the plaintiffs under said policies.

The policies in question insured the plaintiffs against direct loss and damage by sprinkler leakage except as provided therein. The hazard covered is sprinkler leakage. The defendants contend that the phrase "except as herein provided", as used in the insuring clause, refers, among other things, to the "hazards not covered" clause above quoted, and that these clauses must be read together. The plaintiffs, however, argue that the said phrase does not apply to the clause relating to other hazards, but refers to other parts of the policies such as uninsurable property, excepted property, other sprinkler leakage insurance, and the like.

The defendants also maintain that, since the policies cover merely sprinkler leakage, the words "loss and damage" therein are used only with reference to that hazard, and, therefore, wherever such words occur in the policies, as in the "hazards not covered" clause, such words should be construed, by reasonable and necessary implication, as meaning loss and damage "by sprinkler leakage", as that term is previously used in the policies. On the other hand, the plaintiffs claim that the insuring clause and the "hazards not covered" clause are not related; that the latter clause is not a true excepting clause, but merely sets out, by way of extreme caution on the part of the insurer, a series of other hazards in no way connected with sprinkler leakage as such; and that, while the insurer is not liable for loss and damage caused solely by such other hazards, it is liable for loss and

damage caused by sprinkler leakage which occurs by reason of the happening of one of such hazards mentioned in the said latter clause. In this connection the plaintiffs further urge that if the words "by sprinkler leakage" were intended to be in the "hazards not covered" clause, the insurer should have placed them there, and not made it necessary to read them into that clause by implication, and that if such clause is ambiguous, then it should be construed against the insurer which wrote it into its policy.

The question raised by the parties herein has been before other courts when they have been called upon to construe sprinkler leakage, fire and other types of policies generally similar to those now before us. The resulting decisions are not uniform. The defendants' position in the cases at bar is supported by the opinion of the court in *Luckett-Wake Tobacco Co.* v. *Globe & Rutgers Fire Ins. Co.,* 171 Fed. 147, upon which case they chiefly rely. That was an action on fire insurance policies which insured the plaintiff "against all direct loss or damage by fire except as hereinafter provided". A subsequent clause in the policies, referred to by the court as an "excepting clause", contained in part the following language: "This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war, or commotion, or military or usurped power, or by order of any civil authority, or by theft . . . ."

The plaintiff sought to recover damages from a fire caused by a riot. The court found for the defendant. In dealing with a contention made by the plaintiff in that case that, in order for the defendant to be free from liability, the words "by fire" should have been inserted in the excepting clause, so-called, after the word "loss", and not be left to implication, the court used the following language at pages 148, 149: "This view appears to be supported by the case of *Commercial Ins. Co.* v. *Robinson,* 64 Ill. 265, 16 Am. Rep. 557; but we cannot yield to the argument nor to that case. The view

seems to be wholly unsound and unmaintainable. The only loss insured against or which is covered by the policies is 'loss by fire,' and we do not doubt that the exception in the policies of loss caused directly or indirectly by 'riot' must include those from fires which are the work of rioters. The excepting clause necessarily relates back to a 'loss by fire,' as that phrase is previously used in the policy; otherwise, the excepting clause is meaningless as referring to a loss not covered by the insurance. . . . If the loss was not by fire, it was not insured against at all, and the excepting clause was useless. If the loss was by fire, it was insured against, unless the fire bringing about the loss was caused directly or indirectly by riot. If the latter, the loss comes within the excepting clause; but in the former the loss was not insured against at all, so that in either event the defense is good."

In reference to the matter of ambiguity the court stated, at page 149: "We know of no reason, or principle of justice, or rule of law which puts insurance contracts, plainly and unambiguously expressed, outside of the rules of proper construction, or exempts either party to them from the obligatory force of their stipulations. . . . True, insurance companies prepare the contracts, and where their terms are ambiguously expressed, and in certain other well-established instances, the courts lean against them in efforts to ascertain their meaning; but such rules have no application here, where there does not appear to be the slightest trouble in ascertaining the meaning of the terms and stipulations of the policies."

To the same effect are *St. John* v. *The American Mutual Fire & Marine Ins. Co.,* 11 N. Y. 516 and *Maryland Casualty Co.* v. *Finch,* 147 Fed. 388. In the latter case, which involved a loss by sprinkler leakage, the chief point discussed in the opinion was whether or not the evidence, as bearing upon the correctness of a portion of the charge of the trial justice, showed that a "cyclone" had damaged the sprinkler

system so as to cause it to leak. The court held that, such damage having been proved, the insurance company was not liable, and that a verdict should have been directed in its favor in view of certain conditions in the policy very similar to the "hazards not covered" clause in the policies in the instant cases. The case of *Bonds-Sanders Paper Co.* v. *Travelers Fire Ins. Co.*, 12 Tenn. App. 479, cited to us by the defendants, although its facts strongly resemble those in the cases before us, and although it was decided in favor of the insurance company, is not directly helpful to the defendants on the point now under consideration, because that point apparently was not raised in the case. However, it is authority on the issue of causation, namely, that the windstorm, a peril excepted in the "hazards not covered" clause, was the proximate cause of the damage suffered by the plaintiff.

In support of their contention herein, the plaintiffs have called to our attention certain cases in which claimants under policies generally similar to those now in question have been permitted to recover. Several of these cases, in our opinion, are distinguishable from the cases at bar by reason of differences in expression and arrangement appearing in the excepting clause, so-called. The following cases fall within that category: *American Paper Products Co.* v. *Continental Ins Co.*, 208 Mo. App. 87; *Boatman's Fire & Marine Ins. Co.* v. *Parker*, 23 Ohio St. 85; *Heffron* v. *Kittanning Ins. Co.*, 132 Pa. 580; *Commercial Ins. Co.* v. *Robinson*, 64 Ill. 265; *Williamsburgh City Fire Ins. Co.* v. *Willard*, 164 Fed. 404.

In all these cases an important ground of the decision was that the clause corresponding to the "hazards not covered" clause in the present policies was, by its express language, clearly divisible, and that, as the insurance company had specifically limited its liability in one portion of the clause, it was reasonable to assume that in the other portion,

where the liability was not so limited, the change in phraseology was deliberate, and that the company did not intend to relieve itself from liability in such latter instance, and that the loss involved was, therefore, covered by the policy. In several of the cases, in addition to the above ground, the court also referred to the well-settled principle that in case of ambiguity the policy would be construed most favorably to the insured.

For example, in *Commercial Ins. Co.* v. *Robinson, supra,* an action on a fire insurance policy, the court, at pages 268, 269, used the following language: "It will be observed that, in a clause of the policy preceding the one under consideration, the company stipulated that it should not be liable 'for any loss or damage *by fire* caused by means of an invasion, insurrection,' etc. Here exemption is specially secured against liability for losses *by fire* caused in a certain manner. But the clause under consideration leaves out the words 'by fire.' It secures exemption from liability for losses caused by explosion, but not from liability for losses *by fire* caused by explosion. The difference in phraseology between the two clauses is so marked, that, when we consider their connection with each other, we can not resist the conclusion that the difference was intended. Whether the difference was intended or not, can not be certainly ascertained, but it is reasonable to resolve the doubt against the company."

Also, in *Williamsburgh City Fire Ins. Co.* v. *Willard, supra,* in which a fire insurance policy was involved, the court, in pointing out the differences in the language used in portions of the clause then under consideration, stated, at pages 407, 408: "The insurer took pains to incorporate in the first exception exemption from liability for loss caused directly or indirectly by invasion, insurrection, etc., and to omit the words 'directly or indirectly' from the second. Having thus in the first exception excluded liability for loss resulting directly or indirectly from the causes specified, or, in other

words, having stipulated for exemption from liability for loss through fire caused by invasion, etc., whether the fire originated on the property insured or was started elsewhere and communicated to it by the burning of intervening property, and having omitted the words 'directly or indirectly' in the second exception, the natural inference is that the intention was to claim a narrower exemption from liability in the latter.

"Applying the maxim that in construing the terms of an insurance policy, if there be any ambiguity, it must be construed most strongly against the insurers, since the language of the policy is their own, effect to that intention can only be given in the present case by holding that the second exception exempts only from liability for loss by fire which is caused directly by volcano, earthquake, etc., and that a loss indirectly caused by the progress of a fire from a distance, although originally started by an earthquake, is not within the exemption." An examination of the "hazards not covered" clause in the policies in the instant cases, however, shows that that part of the clause with which we are concerned is made up of a uniform series of phrases, containing no change in construction, and is not divisible.

The plaintiffs, however, rely largely on the cases of *Maxwell* v. *Springfield Fire & Marine Ins. Co.*, 73 Ind. App. 251, and *Hanover Fire Ins. Co.* v. *Newman's, Inc.*, 108 Fed. (2d) 561. In the former of these cases, which involved a sprinkler leakage policy, in finding for the plaintiff, the loss by leakage having been caused by a tornado which injured the sprinkler system, the court rested its decision on the ground that the clause which it was passing upon was ambiguous, and, therefore, should be construed in favor of the insured. In that case the clause in question was of uniform construction and, in many respects, was very similar to the "hazards not covered" clause in the present policies. The clause before the Indiana court read in part as follows: "This Company shall not be liable . . . (4) 'nor for loss caused by lightning

(whether fire ensues or not), cyclone, tornado, windstorm, earthquake, explosion, or blasting . . . .' "

In *Hanover Fire Ins Co.* v. *Newman's, Inc., supra,* a case involving liability under a sprinkler leakage policy, the holding of the court is stated briefly, and the full provisions of the policy before the court are not set out in the opinion. It would appear, however, that, in all probability, the policy is similar to the policies we are considering. In finding for the insured, the court, at page 563, held: "If the policy had excepted damage by sprinkler leakage caused by cyclone, a different question would be presented. Under the plain provisions of the contract damage caused by cyclone and damage caused by sprinkler leakage are separate and distinct risks. The policy does not exclude damage from sprinkler leakage caused by extraneous force. Assuming the sprinkler leakage was caused by the cyclone, that would not prevent recovery."

In support of that holding, the court cited *Maryland Casualty Co.* v. *Razook,* 24 Fed. (2d) 160, a case previously decided in the same circuit. In the last-mentioned case, however, the policy being construed was of a different kind, and apparently raised a question involving the reconciling of two provisions in the policy, one in the insuring clause and the other in the "hazards not covered" clause. The policy was a "water damage policy", and insured the plaintiff, among other things, against all direct loss and damage from certain sources, one of which was "Rain or snow driven or admitted through broken or open windows and skylights . . . ." The other clause provided that: "This company shall not be liable for loss or damage caused directly or indirectly by fire, lightning, cyclone, tornado, windstorm, earthquake . . . ."

The evidence showed that a hurricane of great violence broke and blew out the windows of insured's store, thereby damaging the fixtures and contents by the rain which ac-

·companied and was driven by said hurricane. In holding the insurer liable the court, at page 161, stated: "To say the least, the language of the 'Hazards Not Covered' clause does not clearly indicate an intention not to insure against loss ·or damage caused by rain driven by a cyclone, tornado, or windstorm, each of which may occur when there is no rain. That language is consistent with an intention to except— not loss or damage from rain, however it is driven through ·open or broken windows—but loss or damage caused directly or indirectly by cyclone, tornado, windstorm, or other hazards specified. . . . That provision did not except loss or damage caused by a rain and windstorm, or by a rain which accompanies a cyclone, tornado, or other windstorm, but was effective to except loss or damage caused, not by rain or snow driven or admitted through broken or open windows or skylights, but solely by one or more of the hazards specified in that provision."

We have considered the divergent views expressed in the cases hereinbefore referred to. The issue before us is how the policies involved in the cases at bar should be construed in relation to the defendants' liability thereunder. Apparently, by the decisions, the question whether or not the language used in these policies is ambiguous, particularly in the "hazards not·covered" clause, is of importance. If such question is answered affirmatively, then the general principle may well be applied that under those circumstances the policies will ordinarily be construed most favorably to the insured. However, if no such ambiguity exists, then that principle has no application. In our opinion, each policy before us must be read and construed as a whole. So viewed, we believe that such policies are not ambiguous, but clearly express the intent of the contracting parties who are, therefore, bound by the plain meaning of the terms and stipulations appearing therein.

Considering the policies in that light, we are led to the conclusion that the defendants' contentions are correct, and

that the words "loss or damage" in the portion of the "hazards not covered" clause involved herein, the purpose of which is to narrow the defendants' liability, are used with reference to loss or damage by sprinkler leakage brought about by the hazards set out therein, and are not used merely as limiting the loss or damage to that caused solely by the hazards specified in that portion of such clause. This seems to us the construction which reasonably and necessarily should be placed upon the clauses in question when they are read together.

The policies insure against all direct loss and damage by sprinkler leakage, "except as herein provided". In our judgment this proviso is general and refers, among other things, to the matters set out in the "hazards not covered" clause. That clause, unless it refers back by implication to the insuring clause, has little meaning. It is difficult to perceive why a series of hazards and perils should be set out after such a general proviso in these policies, unless they were intended to be connected in some manner with the loss or damage insured against.

The view taken by us in construing the policies in the instant cases is, in substance, the one taken by the court in *Luckett-Wake Tobacco Co.* v. *Globe & Rutgers Fire Ins. Co., supra*, when it passed upon policies generally similar in form to those we are now considering. The questions at issue are fully and carefully discussed in that case, and the reasoning followed by that court in reaching its conclusion appears to us to be sound. We find, therefore, that the decision of the trial justice in the cases at bar was without error.

The exception of the plaintiff in each case is overruled, and each case is remitted to the superior court for the entry of judgment for the defendant on the decision therein.

*Hinckley, Allen, Tillinghast & Wheeler, Chauncey E. Wheeler, Isadore Paisner,* for plaintiffs.

*Sherwood & Clifford, Sidney Clifford,* for defendants.