14 So.2d 430

## AMERICAN MFG. CORPORATION, Inc., v. NATIONAL UNION FIRE INS. CO. OF PITTSBURG, PA.

No. 36452.

June 29, 1942.

Rehearing Denied June 21, 1943.

Lemle, Moreno & Lemle, of New Orleans, for defendant and appellant.

Lazarus, Weil & Lazarus, of New Orleans, for plaintiff and appellee.

ODOM, Justice.

Plaintiff, a corporation, is engaged in the business of manufacturing, storing, and selling women's garments in the City of New Orleans. It brought this suit against the National Union Fire Insurance Company to recover the sum of $2,225.89, alleging as a cause of action that defendant issued to it an insurance policy insuring it against all direct loss and damage by "sprinkler leakage", to an amount not exceeding $52,500, on all contents belonging to it in the premises 1052 Constance Street in New Orleans; that the policy was in full force and effect on February 26, 1939, when a "sprinkler leakage" occurred in the building used and occupied by it for the purposes of its business, causing water damage to its manufactured products and raw material then in said premises.

The defendant admitted the issuance of the policy, and admitted that the policy was in effect on February 26, 1939, when the alleged damage occurred. But it denied liability on the ground that the plaintiff's loss was not covered by the insurance con-

tract, its special defense being that the policy contained the following clause;

"This Company shall not be liable for loss or damage caused directly or indirectly by * * * fire, lightning, cyclone, tornado, windstorm * * *."

This exception was specially pleaded by defendant, and it alleged that plaintiff's loss, if any, was caused directly or indirectly by one of the above enumerated exceptions.

There was judgment for plaintiff in the amount claimed, and defendant appealed.

The plaintiff attached the insurance policy to its petition and made it a part thereof. The policy contains the following coverage clause:

"* * * against all *direct loss and damage by 'sprinkler leakage'*, except as herein provided."

The terms of the policy restrict the coverage to the contents of the building, and provide that it is made and accepted subject to the stipulations and conditions "printed on the back hereof, which are hereby made a part of this policy".

On the back of the policy, "sprinkler leakage" is defined as follows:

"Wherever in this policy the term 'Sprinkler Leakage' occurs, it shall be held to mean leakage or discharge or water or other substance from within the 'Automatic Sprinkler System' resulting in loss or damage to the property described herein."

On the back of the policy there is also printed the following "Hazards Not Covered" clause:

"This Company shall not be liable for loss or damage caused directly or indirectly by seepage or leakage of water thru building walls, foundations, sidewalks, or sidewalk lights (unless caused by 'Sprinkler Leakage'), or by condensation or deposits on the 'Automatic Sprinkler System', or by floods, inundations, or backing up of sewers or drains, or by the influx of tide water or water from any source other than the 'Automatic Sprinkler System', or by fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, including explosion and/or rupture of steam boilers and fly-wheels, blasting, invasion, insurrection, riot, civil war or commotion, or by military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after a 'Sprinkler Leakage'; nor, unless otherwise provided by agreement in writing added hereto, for loss or damage caused directly or indirectly by aircraft and/or aircraft equipment (whether on or off the ground-- and not contained in the building(s) described herein) and/or objects falling or descending therefrom."

The facts are not disputed. For the manufacture, storage, and sale of women's garments, the plaintiff corporation used space on the third floor of a four-story building, in which there had been installed an Automatic Sprinkler System. One of the feed pipes, 3½ inches in diameter, which conveyed water from the city mains to the sprinkler system, was attached to the roof of the building. At or about midnight on February 26, 1939, a section of the

roof to which this pipe was attached was blown off by a tornado or windstorm. This broke the feed pipe, and from or through it there escaped into the building on the fourth floor a large quantity of water, which reached the third floor, where plaintiff had its establishment, through stairways and elevator shafts. Plaintiff's manufactured articles and raw material then stored on the third floor were damaged by the water. The amount of the damage is admitted by defendant. But it denied liability.

This litigation arose out of a disagreement between the parties as to the interpretation and meaning of the comprehensive "Hazards Not Covered" clause written into the policy. That clause mentions numerous hazards which are not involved in this case. The only ones material for the determination of the issues here involved are "cyclone, tornado, windstorm". That clause may therefore be narrowed, as far as this suit is concerned, to this: "This Company shall not be liable for loss or damage caused directly or indirectly by * * * cyclone, tornado, windstorm * * *."

Counsel for plaintiff argue that, under the agreed statement of facts, which shows that the damage to plaintiff's property was caused by water which came from the sprinkler system, its loss is covered by the policy, because the coverage clause quoted above insured it against all direct loss and damage by sprinkler leakage even though the event which admittedly brought about the leakage is one of the hazards named in the "Hazards Not Covered" clause.

They say the hazards mentioned in that clause are wholly unrelated to the hazard insured against. Referring to the "Hazards Not Covered" clause, which begins with the statement that the company shall not be liable "for loss or damage caused directly or indirectly by" certain named hazards which follow, counsel say in their brief that it would be erroneous grammatical construction and contrary to reason to say that "the words 'directly or indirectly', in the second line of the exceptive clause, carry their meaning, significance and restriction down through the entire eighteen lines of the exception". They say that the "Hazards Not Covered" clause does not relate back to the phrase "except as herein provided", as used in the coverage clause, and that the two are not to be read and construed together. They contend further that the policy, construed as a whole, is ambiguous, and they invoke the well recognized rule that, if an insurance policy is so drawn as to be equivocal, uncertain, or ambiguous and, for that reason, susceptible of two or more interpretations, either one being reasonable and sensible, the interpretation most favorable to the insured should be adopted.

■ We recognize this rule. Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75, 125 A.L.R. 1075. The reason for the rule is that "The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it". Stroehmann et al. v. Mutual Life Ins. Co. of New York, 300 U.S. 435, 57 S.Ct. 607, 609, 81 L.Ed. 732.

While we recognize this general rule, yet, for reasons which we shall presently state, we cannot subscribe to counsel's argument that the language used in the policy here involved is uncertain or ambiguous.

The position taken by counsel for the insurance company is that the provisions of the policy are not ambiguous; that the "Hazards Not Covered" clause relates back to the phrase "except as herein provided", and that the words "directly or indirectly" relate to each of the hazards mentioned. Plainly stated, the insurance company rests its defense on its contention that the "Hazards Not Covered" clause is clearly, under the admitted facts, an exclusion of liability for the damage to plaintiff's property.

Courts are bound to give legal effect to all contracts having a lawful purpose according to the true intent of the parties, and that intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequence. Revised Civil Code, Article 1945.

■ Insurance policies are contracts between the parties, and, in construing them, courts must first of all ascertain the true intent of the parties, if this is possible.

"When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would ren-

der it nugatory." Revised Civil Code, Article 1951.

"All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act." Revised Civil Code, Article 1955.

These general rules are fundamental.

■ In the case of Rolland's Heirs v. McCarty, 19 La. 77, decided in 1841, it was held by this court that "The court will not presume, that parties make use of words in their contracts to which no meaning is attached by them. Some effect is to be given to every word if possible; and but rarely will the court reject words or phrases in a contract as surplusage". In Clay v. Ballard, 9 Rob. 308, 41 Am.Dec. 328, decided in 1844, this court held that "In the interpretation of a contract, it will not be presumed that either party intended to impose an absurd or impossible condition".

The general rule announced in the above cited cases has been consistently followed by this court. Istrouma Mercantile Co., Inc., v. Northern Assur. Co., Limited, of London, 183 La. 855, 165 So. 11, decided in 1935, and Gautreaux et al. v. Harang et al., 190 La. 1060, 183 So. 349, decided in 1938.

The hazard covered by this policy is "sprinkler leakage", and the insurance company obligated itself to protect plaintiff against all direct loss and damage resulting from that hazard, *"except as herein provided"*. (Italics are the writer's.)

One looking at the policy would discover without reading it carefully that the

only hazard covered was "sprinkler leakage". In the coverage clause the words "Sprinkler Leakage" are printed in bold capital letters and are enclosed within quotation marks. At the top of the first page of the policy, the following words are printed in bold type "Sprinkler Leakage Policy—Form D", and on the same page, following the coverage clause, are written these words in capital letters: "Sprinkler Leakage—Property Damage Form".

The policy is folded in the usual way so as to show on the outside the amount of coverage, the premium paid, its expiration date, the name of the insured and of the insurer; and at the top, above the other data, are printed these words in capital letters: "Sprinkler Leakage Policy".

In the "Hazards Not Covered" clause are mentioned such hazards as seepage or leakage of water through building walls or foundations (unless caused by sprinkler leakage), condensation or deposits on the Automatic Sprinkler System, floods, inundation, backing up of sewers, influx of tide waters, water from any source other than the Automatic Sprinkler System, fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, rupture of steam boilers and flywheels, blasting, invasion, etc.

Plaintiff's contention is that these hazards have no relation to the insuring clause. In their brief counsel for plaintiff quote from an opinion handed down by the Court of Appeal, Parish of Orleans, on April 21, 1941, in the case of Hardin Bag &

Burlap Co., Inc., v. Fidelity & Guaranty Fire Corporation, 1 So.2d 830, 832, in which case the issue involved was identical with the one involved in this case. The coverage and the "Hazards Not Covered" clauses in the two policies are identical. We assume that counsel approve the view expressed by the court in that case. The quoted extract is as follows:

"The long and short of it is that the so-called 'Hazards not Covered' provision is inappropriate to a sprinkler leakage policy. Why this provision is in the policy we are unable to say, but it is as clear to us as anything can be that it does not and was not intended to qualify the original coverage of the policy. The best that can be said for it is that in a policy which insured against the results of sprinkler leakage, a number of other hazards unrelated to the hazard insured against are expressly declared to be not within the coverage of the policy. In our opinion, the provision referred to, as an exception to the coverage of the policy, is to say the least, ambiguous. It must be ignored."

Counsel suggest that the "Hazards Not Covered" clause was inserted for the purpose of making it certain that the insurer disclaimed liability for loss or damage caused solely and independently by the hazards mentioned therein, which hazards are in no way connected with sprinkler leakage.

■ We cannot lend sanction to the ruling of the Court of Appeal that the "Hazards Not Covered" provision of the policy is wholly inappropriate to a sprinkler leakage policy and that "it does not contract. If the "Hazards Not Covered"

and was not intended to qualify the original coverage of the policy"; nor do we think that clause was inserted for the purpose suggested by counsel.

If the "Hazards Not Covered" clause was not intended to relate back to the phrase "except as herein provided" and to qualify the coverage clause in the policy, it was inserted for no purpose at all. The coverage clause in the policy limits liability to direct loss and damage caused by sprinkler leakage. The policy is labeled inside and out as a "Sprinkler Leakage Policy". A casual reading of the policy discloses that it was not intended to cover loss and damage caused independently by such hazards as fire, cyclone, windstorm, earthquake, explosion, or floods. If the insured in this case looked at his policy, he knew necessarily that he was not carrying windstorm or tornado insurance, or insurance against any hazard other than sprinkler leakage. It is difficult to imagine why this long list of hazards should be mentioned in the policy following the coverage clause if it were not intended that they be connected with, or related in some way to, the loss and damage specifically insured against.

According to the rules laid down in our Code for the interpretation of contracts, all clauses are interpreted the one with the other, giving to each the sense that results from the entire act. Courts are not to presume that there are written into contracts words, phrases, or clauses to which no meaning is attached. We must give effect to each of the clauses written into this

clause does not relate back to the phrase "except as herein provided", written into the policy immediately following the coverage clause, no meaning can reasonably be attached to it. The entire clause may as well be deleted from the policy. But we are not permitted to delete it, and must attach to it some meaning. This we do, and hold that it relates back to the phrase mentioned and qualifies the coverage clause.

None of the words, phrases, or clauses of the policy must be overlooked. First, we note the phrase "except as herein provided", immediately following the coverage clause. The coverage clause relates to but one hazard, sprinkler leakage, and the phrase "except as herein provided" shows that there was some provision in the policy relating to, and qualifying, that clause—some provision setting out conditions or circumstances under which the insurer would not be liable for loss and damage caused by sprinkler leakage.

When the policy is examined, only one such provision is found, the "Hazards Not Covered" clause. It is therefore obvious that the phrase "except as herein provided" relates to the "Hazards Not Covered" clause and links that clause with the insuring clause.

The "Hazards Not Covered" clause provides that the insurer shall not be liable for loss or damage *"caused directly or indirectly* by" the special hazards mentioned. (Emphasis ours.) We emphasize the words "caused directly or indirectly" because they have a direct bearing upon the issue involved. Counsel for plaintiff say in their brief that these words do not carry their meaning, significance, and restriction down through the 18 lines of the exception. In other words, the argument is that they do not relate to each of the hazards mentioned in the exception. Counsel do not specify the hazards to which they think those words do not relate or those to which they think they do relate.

In our opinion, according to the rules of grammatical construction, the words "directly or indirectly" qualify or modify the word "caused"; and each of the series of prepositional phrases in which the various hazards are mentioned is connected with, and linked to, the word "caused".

The "Hazards Not Covered" clause means just what it says, which is that the "Company shall not be liable for loss or damage caused directly or indirectly

*"by* seepage or leakage of water thru building walls, foundations, sidewalks, or sidewalk lights (unless caused by 'Sprinkler Leakage'),

*"or by* condensation or deposits on the 'Automatic Sprinkler System',

*"or by* floods, inundations, or backing up of sewers or drains,

*"or by* the influx of tide water or water from any source other than the 'Automatic Sprinkler System',

*"or by* fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, including explosion and/or rupture of steam boilers and fly-wheels, blasting, invasion, insurrection, riot, civil war or commotion," etc. (Emphasis ours.)

In order to make the meaning of this clause clear, it was not necessary, as counsel suggest, to repeat the words "caused directly or indirectly" before each of the prepositional phrases in which the various hazards are mentioned. The relation of the last prepositional phrase in the series to the words "caused directly or indirectly" is just as close and direct as is that of the first listed phrase. Therefore, as already stated, what the clause means, in so far as the issues here involved are concerned, is that the insurer shall not be liable for loss or damage caused directly or indirectly by cyclone, tornado, or windstorm.

When the phrases and clauses of the policy are read and construed together as they should be, the meaning of this contract is clear. It is not ambiguous or deceptive. A windstorm, one of the excepted hazards, was the indirect cause of the damage, and, since the company is not liable under the policy for loss and damage "caused directly or indirectly" by that hazard, plaintiff cannot recover.

Counsel speak of the "Hazards Not Covered" clause as being "tucked away among the 198 lines of fine print of the inside page of the policy". But that clause cannot be regarded as a snare to catch the unwary, because, immediately following the coverage clause and connected with it, is the phrase "except as herein provided", and the policy says on the front page that it is "made and accepted subject to the foregoing stipulations and conditions, and to the stipulations and conditions printed on the back hereof, which are hereby made a part of this policy".

As touching the question whether the language used in this policy is ambiguous, especially that used in the "Hazards Not Covered" clause, and the question as to how policies like this one should be construed, it is pointed out by counsel that the courts are not in accord; that divergent views have been expressed touching these points, and that this shows, according to counsel, that the company in the preparation of its policy used language not readily understood by even those learned in the law, and that, this being so, we should hold that the policy is ambiguous and should give plaintiff the benefit of the rule already set out herein.

It is true that the courts are not in entire accord touching the issues involved in cases of this kind. But, after reading all the cases cited by counsel for both sides, our conclusion is that the weight of authority is against plaintiff's contentions.

In our opinion, the leading case involving the liability of an insurer under a "sprinkler leakage" policy is that of Industrial Paper & Cordage Co. v. Ætna Ins. Co., decided by the Supreme Court of Rhode Island on July 25, 1940, and reported in 65 R.I. 444, 14 A.2d 657, 662, 130 A.L.R. 703, per curiam denying application for reargument reported in 65 R.I. 444, 16 A.2d 327, 130 A.L.R. 710. In that case the coverage clause and the "Hazards Not Covered" clause are identical, word for word, with those in the policy involved in the case at bar. The facts in that case,

as stated by the court, were as follows: Plaintiffs were carrying on a business and owned certain goods in a five-story building equipped with an Automatic Sprinkler System. A severe windstorm blew down a brick chimney serving, and standing near, the building, and a part of the chimney fell through the roof and the two upper floors of the building, breaking the main feeder pipe of the sprinkler system. As a result of the break, large quantities of water were discharged from the sprinkler system onto certain personal property, then in the building, which belonged to the plaintiffs. This water caused damage to plaintiffs' goods.

The insurance company took the position that, under the provisions of the "Hazards Not Covered" clause and under the facts, which were not disputed, it was not liable. The court cited and reviewed the leading applicable cases, and reached the conclusion that there was no liability. The court said:

"In our opinion, each policy before us must be read and construed as a whole. So viewed, we believe that such policies are not ambiguous, but clearly express the intent of the contracting parties who are, therefore, bound by the plain meaning of the terms and stipulations appearing therein.

"Considering the policies in that light, we are led to the conclusion that the defendants' contentions are correct, and that the words 'loss or damage' in the portion of the 'hazards not covered' clause involved herein, the purpose of which is to narrow the defendants' liability, are used with ref-

erence to loss or damage by sprinkler leakage brought about by the hazards set out therein, and are not used merely as limiting the loss or damage to that caused solely by the hazards specified in that portion of such clause. This seems to us the construction which reasonably and necessarily should be placed upon the clauses in question when they are read together.

"The policies insure against all direct loss and damage by sprinkler leakage, 'except as herein provided'. In our judgment this proviso is general and refers, among other things, to the matters set out in the 'hazards not covered' clause. That clause, unless it refers back by implication to the insuring clause, has little meaning. It is difficult to perceive why a series of hazards and perils should be set out after such a general proviso in these policies, unless they were intended to be connected in some manner with the loss or damage insured against."

That case is on all fours with the case at bar and supports the contention of the defendant. We think the ruling is sound. It is in entire accord with the views we entertain.

One of the cases cited by counsel for plaintiff in support of their contentions is Norwich Union Fire Ins. Society v. Stanton, 2 Cir., 191 F. 813, 814. But that case is not in point. The suit was brought on a fire insurance policy for a loss arising out of a fire caused by an earthquake. The fire policy contained the following clause:

"This society shall not be liable for loss caused *directly or indirectly* by invasion,

insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority *or for loss or damage occasioned by or through any volcano, earthquake, or hurricane * * *.*" (Italics ours.)

It will be noted that this clause provides that the society "shall not be liable for loss caused directly or indirectly" by certain named hazards, among them being insurrection, riot, civil war, etc., "or for loss or damage occasioned by or through any volcano, earthquake, or hurricane".

The words "directly or indirectly" are omitted from that part of the clause relating to "loss or damage occasioned by or through any volcano, earthquake, or hurricane". The court said that "since the words 'directly or indirectly' appeared in the first clause of the exception from loss by invasion, insurrection, etc., but did not appear in the second clause of said exception, it followed that the exception covered only loss or damage caused directly by earthquake".

That case, like others cited by plaintiff, is distinguishable from the one at bar for the reason that, while the "Hazards Not Covered" clause in that case is similar to the one here, it is not identical. In the case under consideration, the "Hazards Not Covered" clause is composed of a series of uniform phrases, each mentioning certain hazards. The clause as a whole is not divisible and involves no change in construction. The same cannot be said of the clause in the Stanton case or of the clauses in other cases cited by plaintiff's counsel.

Counsel cite, among others, the cases of Williamsburgh City Fire Ins. Co. v. Willard, 9 Cir., 164 F. 404, 21 L.R.A.,N.S., 103, and American Paper Products Co. v. Continental Ins. Co., 208 Mo.App. 87, 225 S.W. 1029. In each of these cases and in the Stanton case, the principal ground on which the decision was based was that the "Hazards Not Covered" clause contained in the policy was, by express language, divisible. The court held in each of those cases that, because the insurer had specifically limited its liability in one section or portion of the clause and had not limited it in the other, it was reasonable to assume that the change in phraseology was intentional, and that the company did not intend to relieve itself of liability in the latter instance. The courts generally lay stress on the words "directly or indirectly". In cases where the coverage is against loss or damage by sprinkler leakage and the sprinkler system is caused to leak by earthquake, the company is not liable if the policy provides that it shall not be liable for loss or damage "caused directly or indirectly" by earthquake. But, if the words "directly or indirectly" are omitted from the clause, there is liability.

This is illustrated by the ruling in the Williamsburgh Fire Ins. Co. case. There the coverage was "against all direct loss or damage by fire except as hereinafter provided" [164 F. 405, 21 L.R.A.,N.S., 103]. The exceptions are these: "This company shall not be liable for loss caused *directly or indirectly* by invasion, insurrection, riot, civil war, or commotion, * * *; *or for loss or damage occasioned by or through*

*any volcano, earthquake, or hurricane* * * *." (Emphasis ours.)

This clause is divisible, as shown by the specific language used. It will be noted that the words "directly or indirectly" are omitted from the second part of the clause. An earthquake caused a fire which destroyed plaintiff's property. The court said:

"If it had been the intention of the policy to exclude liability for all loss by fire caused by earthquake, it would have been a plain and simple matter to express that intention in the words used in the first section. Had that been done, no question of construction could have arisen under the facts in the present case. But the difference in the phraseology is so marked and significant as to compel the conclusion that it was intentional. The insurer took pains to incorporate in the first exception exemption from liability for loss caused directly or indirectly by invasion, insurrection, etc., and to omit the words 'directly or indirectly' from the second. Having thus in the first exception excluded liability for loss resulting directly or indirectly from the causes specified, or, in other words, having stipulated for exemption from liability for loss through fire caused by invasion, etc., whether the fire originated on the property insured or was started elsewhere and communicated to it by the burning of intervening property, and having omitted the words 'directly or indirectly' in the second exception, the natural inference is that the intention was to claim a narrower exemption from liability in the latter."

In the case of American Paper Products Co. v. Continental Ins. Co., the coverage was against all loss or damage caused by sprinkler leakage. The "Hazards Not Covered" clause provided that: "This company shall not be liable for loss by fire, however caused; nor for loss resulting from the leakage of water, if such leakage is caused directly or indirectly by fire * * * nor for loss caused by lightning (whether fire ensues or not), cyclone, tornado, windstorm, earthquake, explosion or blasting * * *."

The leakage from the sprinkler system was caused by an explosion which disrupted the pipes of the sprinkler system. Holding that the defendant was liable, the court said:

"It should be noted that the part of the exception relied on and standing alone is an exemption from loss caused by an explosion, and not an exemption from loss resulting from leakage of water caused directly or indirectly by an explosion. If the clause read 'nor for loss by leakage of water caused directly or indirectly by explosion,' there would be no doubt of defendant's exemption from liability under the admitted facts of the case. * * *

"When the company exempted itself in the same paragraph of exceptions from loss by fire, it very plainly stipulated against 'loss by fire, however caused, and from loss resulting from the leakage of water, if such leakage is caused directly or indirectly by fire.' But, when it came to the exemption on account of an explosion, all reference to leakage is omitted.

and the language used is 'nor for loss caused by an explosion'."

Another case relied upon by plaintiff is Maxwell v. Springfield Fire & Marine Ins. Co., 73 Ind.App. 251, 125 N.E. 645, 646. There the coverage was "against all direct loss or damage by sprinkler leakage". The exceptions were the same as those in the policy involved in the case of American Paper Products Co. v. Continental Ins. Co., supra. A windstorm tore off a part of the roof, resulting in the breaking of the feed pipes of the sprinkler system, and water from the pipes damaged plaintiff's property. The insurer was held liable for the same reason that the insurer was held liable in the American Paper Products Co. case.

Another case cited by plaintiff is Maryland Casualty Co. v. Razook, 5 Cir., 24 F.2d 160. That case was discussed by the court in the Rhode Island case (Industrial Paper & Cordage Co. v. Ætna Ins. Co., 65 R.I. 444, 14 A.2d 657, 662, 130 A.L.R. 703), from which we have quoted at length. We here quote what the Rhode Island court said about the Razook case:

"In the last-mentioned case [the Razook case], however, the policy being construed was of a different kind, and apparently raised a question involving the reconciling of two provisions in the policy, one in the insuring clause and the other in the 'hazards not covered' clause. The policy was a 'water damage policy', and insured the plaintiff, among other things, against all direct loss and damage from certain sources, one of which was 'Rain or snow driven or admitted through broken or open windows and skylights * * *.' The other clause provided that: 'This company shall not be liable for loss or damage caused directly or indirectly by fire, lightning, cyclone, tornado, windstorm, earthquake * * *.'"

The rulings in the leading cases cited by counsel for plaintiff were based generally upon the courts' interpretation of the "Hazards Not Covered" clauses in the policies involved, and, as we have stated, the phraseology of those clauses was quite different from that in the policy here involved. For that reason those cases are not on all fours with the case at bar.

The case of Hanover Fire Ins. Co. v. Newman's, Inc., 5 Cir., 108 F.2d 561, 563, decided in December, 1939, was a sprinkler leakage case, and, while the court in its opinion did not state in detail all the provisions of the policy, we infer from the opinion that the policy was identical in its provisions with that involved here. The sprinkler system was disrupted by a tornado, plaintiff's property was damaged by water, and the insurer was held liable. The court said:

"If the policy had excepted damage by sprinkler leakage caused by cyclone, a different question would be presented. Under the plain provisions of the contract damage caused by cyclone and damage caused by sprinkler leakage are separate and distinct risks. The policy does not exclude damage from sprinkler leakage caused by extraneous force. Assuming the sprinkler leakage was caused by the cyclone, that would not

prevent recovery. Maryland Casualty Co. v. Razook, 5 Cir., 24 F.2d 160."

The court did not analyze the "Hazards Not Covered" clause, nor did it discuss the question whether that clause related back to the phrase "except as herein provided" or whether it qualified the coverage clause of the policy. In our opinion the ruling in that case was erroneous. The only case cited by the court was that of Maryland Casualty Co. v. Razook, supra, which case, we think, is not in point.

It is clear, we think, that the "Hazards Not Covered" clause in the policy under consideration in the case at bar was inserted to narrow the defendant's liability. Evidently it was intended that there should be no liability for sprinkler leakage damage where the leakage was brought about by the hazards mentioned. This is indicated by the very low rate of premium charged for the insurance. The amount of the insurance was $52,500. The premium paid was $158.81 for three years, or $52.93 per year—about one-tenth of one per cent.

The following cases support the defendant's contentions: Industrial Paper & Cordage Co. v. Ætna Ins. Co., 65 R.I. 444, 14 A.2d 657, 130 A.L.R. 703, and the cases therein cited and reviewed; Maryland Casualty Co. v. Finch, 8 Cir., 147 F. 388, 8 L.R.A.,N.S., 308; Luckett-Wake Tobacco Co. v. Globe & Rutgers Fire Ins. Co., C.C., 171 F. 147; Bonds-Sanders Paper Co. v. Travelers Fire Ins. Co., 12 Tenn.App. 479; Ætna Ins. Co. v. Boon, 95 U.S. 117, 24 L.Ed. 395.

In the Luckett-Wake Tobacco Co. case, the court, speaking of the excepting clause,

or "Hazards Not Covered" clause, as it is generally termed, said [171 F. 149]:

"The excepting clause necessarily relates back to a 'loss by fire,' as that phrase is previously used in the policy; otherwise, the excepting clause is meaningless as referring to a loss not covered by the insurance."

Similar rulings were made in some of the other cases cited by defendant. These cases refute completely the argument made by counsel for plaintiff.

For the reasons assigned, the judgment appealed from is reversed, and it is ordered that plaintiff's demands be rejected and its suit dismissed at its costs.

McCALEB, Justice (concurring).

While a member of the Court of Appeal for the Parish of Orleans, I participated in the first hearing and subscribed to the original opinion in the case of Hardin Bag & Burlap Co., Inc., v. Fidelity & Guaranty Fire Corporation, La.App., 1 So.2d 830, which opinion was subsequently reinstated on rehearing. See 5 So.2d 390. The Hardin Bag Company case, as pointed out in the opinion in this case, involves the identical question presented here. Having had the opportunity in this matter to reconsider the views to which I subscribed in the original opinion in the Hardin Bag case, I am convinced that that case was incorrectly decided and that the interpretation of the sprinkler insurance policy adopted by the court in this case is eminently sound.

For these reasons, I fully subscribe to the opinion and decree herein.