JjGUIDRY, Chief Judge.
In this action for breach of contract, plaintiff, Virgil W. Coon, appeals a judgment of the trial court dismissing his suit. We affirm.

*706
FACTS

The facts in this case are not in dispute. In June 1971, Virgil W. Coon, who was then president, chairman of the board of directors and the majority shareholder of Formation Specialties, Inc., executed a “Deferred Compensation Contract” with said corporation. That contract provides, in pertinent part, as follows:
NOW, THEREFORE, in consideration of the mutual promises of the parties and the mutual benefits they will gain by the performance thereof, the parties hereto agree as follows:
1. The Employee agrees to continue in the Corporation’s service until he attains age Sixty-Five (65). Until then, the Corporation shall employ him in an executive capacity and pay him a salary of at least $12,000.00 a year. The Employee, until he reaches age 65, shall devote all hisjjtime, skill, and effort to said employment, and shall promptly and faithfully perform all such work pertaining to said employment as the Corporation may require of him.
2. Beginning with the first month after the Employee reaches age 65, the Corporation shall pay him $405.00 a month for Sixty (60) months, subject to the conditions in Section 5 and Section 6 hereof....
[[Image here]]
4. In event the Employee, before he attains age 65, voluntarily leaves the Corporation’s service or is discharged for proper cause, all payments under Section 2 and Section 3 hereof (whether payable to him or his widow or his widow’s heirs) shall be forfeited.
5. Payments under Section 2 hereof shall be subject to the following condition:
Such payments shall cease in event the Employee, without the Corporation’s consent, accepts any employment by, makes any substantial financial investment in, becomes actively interested in, takes part in the affairs of, or gives advice and counsel to, any competing company or firm.
6. This contract shall be binding upon the parties hereto, their heirs, executors, administrators, successors, and assigns.
Neither the Employee nor his spouse, however, shall assign any part of his or her rights under this contract, unless the Corporation agrees thereto in writing. In event of a merger, consolidation, or reorganization involving the Corporation this contract shall continue in force and become an obligation of the Corporation’s successor or successors.
Over the next several years Formation Specialties underwent several ownership and name changes resulting from purchases, mergers, etc. By 1975 what was once Formation Specialties was operating as The Analysts, Inc. and was owned by a holding company, Petro Serve.
In 1975, Schlumberger Ltd. purchased 27% of the outstanding shares of Petro Serve and, in 1977, Schlumberger Technology Corporation, a wholly-owned subsidiary of Schlumberger, Ltd., purchased the remainder of Petro Serve stock.
Plaintiffs’ Deferred Compensation Contract was accepted by The Analysts in the 1972 merger with Formation Specialties and was also recognized by Schlumberger in its acquisition of |3The Analysts (via a purchase of Petro Serve) in 1977. During this entire period Virgil Coon remained in an executive position, first with Formation Specialties and then with The Analysts.
On February 1, 1979, Coon was reassigned to the position of “Special Sales Representative”, a position he held until he left the company. On June 2, 1980, Coon submitted the following letter to his employers:
Gentlemen, please accept this, my letter of resignation from The Analysts.
In accordance with The Analysts, Inc. Patent and Confidential Information Agreement, Paragraph 7, this letter will constitute sixty days notice.
My sincere wishes for the continued success of the company.
And, in a June 20, 1980 memorandum to employees of The Analysts, he stated:
... After serious consideration, I have reached a definite decision to resign from the company. I feel it is time for me to do some other things. To quote Thoreau:
*707 “Let everyone endeavor to be what he was made”.
Sometime after Coon left The Analysts, its name was changed to Anadrill/Sehlumberger.
Early in 1991, Coon contacted Anad-rill/Schlumberger informing them that he would reach his sixty-fifth birthday on November 6th of that year and seeking to collect the benefit provided for in paragraph two of the 1971 Deferred Compensation Contract. Anadrill/Sehlumberger refused Coon’s demand stating that Coon’s voluntary retirement in 1980 operated to forfeit this benefit (see paragraph four of Deferred Compensation Contract, supra). This suit followed.

LAW AND DISCUSSION

Defendants responded to plaintiff’s suit with an exception of prescription. The trial judge found that the contract had been breached in 1980 either voluntarily by Coon when he resigned or by defendants if they had indeed forced his early retirement by refusing to continue to employ him in an executive | capacity. In either case, the trial court concluded that Coon’s cause of action was a personal action governed by La.C.C. art. 3499 which provides for a liberative prescription of ten years and as such had prescribed. Plaintiff appealed.
Appellant, Virgil Coon, makes a two pronged argument. First, he argues that his resignation in 1980 was not voluntary, but forced by Anadrill/Schlumberger’s (then The Analysts) refusal to continue to employ him in an executive capacity, but rather expecting him to accept demotion to sales representative. Secondly, appellant argues that his Deferred Compensation Contract is a conjunctive contract (see La.C.C. art. 1807) and that any action he had for Anadrill/Sehlumber-ger’s breach of paragraph one of his contract was separate and distinct from his action against them for their alleged breach of paragraph two, and that prescription on each of these separate causes of action only began to run from the breach of that particular obligation. Therefore, he argues that while any rights he had to sue because of his “forced resignation” under paragraph one prescribed in 1990, prescription on his cause of action under paragraph two, defendants’ refusal to pay deferred compensation benefits, did not begin to run until Anadrill/Sehlumberger refused to honor its obligation under paragraph two when he reached the age of 65 in the year 1991. We disagree.
The basis of contract interpretation was discussed by our Supreme Court in Lambert v. Maryland Casualty Company, 418 So.2d 558 (La.1982), where the court explained:
Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. St. Ann v. American Insurance Companies, 182 So.2d 710 (La.App. 4th Cir.1966). They must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. LSA-C.C. Art. 1946. A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect Ugiven to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. LSA-C.C. Art. 1955; Polozola v. Garlock, Inc., 343 So.2d 1000 (La. 1977); Reuter v. Reuter’s Succession, 206 La. 474, 19 So.2d 209 (1944); Solomon v. Hickman, 219 So.2d 330 (La.App. 1st Cir. 1969); Crow v. Southern Natural Gas Company, 210 So.2d 596 (La.App.2d Cir. 1968), writ refused, 252 La. 834, 214 So.2d 160 (1968). Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning or effect. American Mfg. Corp. v. National Union Fire Ins. Co., 203 La. 515, 14 So.2d 430 (1942); Gautreaux v. Harang, 190 La. 1060, 183 So. 349 (1938); Solomon v. Hickman, supra; Bruno v. McCabe, 71 So.2d 245 (Orl.App.1954).
When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in the same contract. LSA-C.C. Art. 1948. Terms that present two meanings must be taken in the sense most congruous to the matter of the contract. LSA-C.C. Art. 1952.
*708 See also First National Bank of Commerce v. City of New Orleans, 555 So.2d 1345 (La. 1990).
In the case at bar, it is clear, under the rules of contract interpretation enunciated above, that the contract is not a conjunctive contract as appellant argues, but rather an indivisible one. The subject of the contract is Coon’s agreement to continued employment and his right to deferred compensation if his employment continued until he reached age 65. The whole of the contract sets out not only what compensation will be paid to whom and for how long, but also his obligation in order to collect same, the company’s obligation to pay same, and the conditions under which the company is relieved of its obligation to pay Coon or his survivors any deferred compensation at all.
It is well settled that the ten year prescriptive period of La.C.C. art. 3499 (formerly C.C. art. 3544), when applied to contracts, begins to run from the date the alleged | fjbreach occurs. Deshotels v. Fruge, 364 So.2d 258 (La.App. 3rd Cir.1978), writ denied, 367 So.2d 388 (La.1979); Abdul-Alim' Amin v. Universal Life Insurance Company of Memphis, Tennessee, 706 F.2d 638 (5th Cir.1983). In paragraph nine of his petition filed against Anadrill/Schlumberger in January 1992, Coon alleges:
On or about May 1, 1980, Mr. Carl Buch-holz, newly appointed President of The Analysts, Inc. by Schlumberger, requested that plaintiff either resign or take a demotion to sales representative, stating that it would be in the best interests of the company for plaintiff to be replaced by a younger, more technically oriented Schlumber-ger manager. Based on those threats, plaintiff under duress was forced into an early retirement and signed a non-compete agreement with no mention of loss or changes in earned benefits.
By plaintiffs own admission, it is established that some action was taken by defendants, which, if proven, was violative of plaintiffs deferred compensation contract more than ten years before his petition was filed. As we observed in Williams v. American Family Mutual Insurance Company, 520 So.2d 1082 (La.App. 3rd Cir.1987), “... Once a plaintiffs petition shows on its face that the prescriptive period has run, the burden of proof is on the plaintiff to show an interruption or suspension of prescription. Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3rd Cir.1982)”. This the plaintiff simply did not do.
Pursuant to the plain terms of the contract, plaintiffs entitlement to payments under paragraph two is made dependent on his continued employment by the company to age 65. We fully agree with the trial court’s analysis that the contract was breached in the year 1980, when Coon either voluntarily resigned or when the defendants forced his early retirement by refusing to continue to employ him in an executive capacity. Therefore, any cause of action which he may have had under such contract had prescribed when the instant suit was filed more than ten years later.
^Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Virgil W. Coon.
AFFIRMED.